## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**RICKY WAYNE TOLBERT, JR.**                                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:18-CV-128-DPJ-JCG**

**WARDEN NASH, et al.**                                                          **DEFENDANTS**

### REPORT AND RECOMMENDATION

BEFORE THE COURT is the Motion to Dismiss (ECF No. 55) and the

Memorandum in Support (ECF No. 56) filed by Defendants Warden Nash, Captain

Crawford, Associate Warden Jenkins, Associate Warden Carlton, Unit Manager

Curry, Case Manager Pullum, Disciplinary Officer Epps, Disciplinary Officer

Sawyer, and J.A. Keller. Plaintiff Ricky Wayne Tolbert, Jr. has filed a Response

(ECF No. 57) and Defendants have filed a Reply (ECF No. 59). Having considered

the submissions of the parties, the record, and relevant legal authority, the

undersigned recommends that the Motion to Dismiss (ECF No. 55) be granted.

### I. BACKGROUND

Plaintiff Ricky Wayne Tolbert, Jr., who is presently incarcerated at the

United States Penitentiary in Leavenworth, Kansas, filed suit on February 27,

2018. His Complaint concerns his time at the Federal Correctional Institution in

Yazoo City, Mississippi. He named Warden Nash, Captain Crawford, Associate

Warden Jenkins, Warden Martin, Captain Martinez, Associate Warden Carlton,

Unit Manager Curry, Case Manager Pullum, Disciplinary Officer Epps, Disciplinary

Officer Sawyer, Southeast Regional Director J.A. Keller, and Unit Manager Jackson

as Defendants.

On March 17, 2017, Tolbert was placed in the Special Housing Unit (SHU) for an alleged violation of the Bureau of Prisons (BOP) Prohibited Act Code 205, engaging in a sexual act. Epps found Tolbert guilty, even though Tolbert sought review of camera footage. Epps sanctioned Tolbert with the loss of 27 days of good conduct time and 30 days in SHU. While in SHU, on April 17, 2017, he was again written up for violation of Prohibited Act Code 205, but he claims the charging officer misidentified him. Sawyer found Tolbert guilty on April 27, 2017, and he sanctioned him with a loss of 27 additional days of good conduct time and 30 additional days in SHU.

Tolbert also alleges that he was placed in the Special Housing Unit (SHU) on August 8, 2017, pending an investigation. The investigation ended on September 15, 2017, and he received an incident report on September 29, 2017 for violating Prohibited Act Code 111A. During an October 11, 2017 disciplinary hearing, the report was amended to a violation of Code 196, abuse of mail. Tolbert was found guilty and sanctioned to a loss of 41 days good conduct time and time served in SHU. He contends he should have been released from SHU on October 12, 2017, but when Captain Crawford reviewed the SHU release list, he scratched Tolbert's name off the list, allegedly due to Tolbert's earlier disciplinary infractions. Tolbert contends that the hearing process and sanctions violated his due process rights, the double jeopardy clause, and the cruel and unusual punishment clause.

Next, Tolbert contends that on October 13, 2017, while still in SHU,

Associate Warden Jenkins told Tolbert that he would not be released back into general population and Jenkins would make sure Tolbert was transferred. Tolbert contends Jenkins discriminated against him. Further, he contends that after being held in SHU for four months, Unit Manager Curry and Case Manager Pullum "have easily been misled by . . . Administration to put me in for transfer(s)." He contends that the first transfer request, a disciplinary transfer request, was denied for lack of information, but Curry and Pullum then submitted an adjustment transfer request in an attempt to "manipulate the system." Tolbert also alleges that he was informed that if the transfer request was denied, he would be returned to general population, even though he should have already been in general population.

Tolbert next argues that he has been prevented from practicing his religious beliefs due to his SHU confinement, as he has not been able to attend the general population religious services. He also claims he has not had his regularly required checkups for his high blood pressure and kidney disease. Further, he contends he is "mentally deranged" because he is unable to sleep and is forced to pace his cell and talk to himself every night until he is tired. He informed the Court that he was released back to general population on April 20, 2018 (ECF No. 9).

Specifically, Tolbert contends that Epps and Sawyer violated his due process rights and discriminated against him by finding him guilty due to his past infractions and not the evidence, while Keller violated his due process rights by denying his disciplinary appeals instead of considering the facts and by ignoring his emergency and sensitive complaints. He states Crawford, Jenkins, Nash, and

3

Carlton are responsible for the alleged due process, double jeopardy, and cruel and

unusual punishment violations as well as for discrimination because they held him

in SHU beyond October 12, 2017. Finally, he claims Curry and Pullum are liable for

due process, double jeopardy, and cruel and unusual punishment violations because

they knew he should not be in SHU and submitted frivolous transfer requests. He

does not identify who denied him medical treatment or prevented him from

practicing his religion.

On February 28, 2020, Defendants Nash, Crawford, Jenkins, Carlton, Curry,

Pullum, Epps, Sawyer, and Keller filed a Motion to Dismiss (ECF No. 55) and a

Memorandum in Support (ECF No. 56). They argue that they cannot be sued in

their official capacity and Tolbert has failed to state a claim upon which relief may

be granted. Plaintiff has filed a response (ECF No. 57) and Defendants have filed a

reply (ECF No. 59).

## II. DISCUSSION

### A.  Defendants Jackson, Martin, and Martinez

After the Court ordered service on the Defendants (ECF No. 29), the

summons issued to Jackson, Martin, and Martinez were returned unexecuted (ECF

Nos. 43, 44, & 45). The summons indicated that Defendant Jackson had passed and

Martin and Martinez had retired. Thereafter, the Court ordered Tolbert to indicate

if he wished to dismiss these Defendants. If not, he was directed to provide a

current street address for Martin and Martinez (ECF No. 51). In response, Tolbert

stated that he wished to voluntarily dismiss these Defendants (ECF No. 52).

Therefore, the undersigned recommends that Defendants Jackson, Martin, and Martinez be dismissed without prejudice.

## B. Legal Standard

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014).

## C. Official Capacity Claims

Under *Bivens*,[1] a federal prisoner may bring an action "against individual officers for a[n] alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP officers in their official capacities as such claims are barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 Fed. App'x 549, 551 (5th Cir. 2004) (citing *Corr. Servs. Corp.*

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

*v. Malesko*, 543 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). To the extent Tolbert is suing each Defendant in his or her official capacity, his claims should be dismissed.

### D. Request for Expungement

In addition to monetary damages, Tolbert seeks expungement of all three disciplinary proceedings, which presumably includes restoration of the lost good time credits. However, these claims are "cognizable only in a habeas corpus action, not in a *Bivens* action." *Muhammad v. Weston*, 126 Fed. App'x 646, 648 (5th Cir. 2005) (citing *Spina v. Aaron*, 821 F.2d 1126, 1128 (5th Cir. 1987)). Therefore, the undersigned recommends that Tolbert's request for expungement be denied.

### E. Double Jeopardy Claim

In his double jeopardy claim, Tolbert alleges that he was held in SHU after he should have been returned to general population and Defendants sought to transfer him because of his disciplinary proceedings. However, "prison disciplinary proceedings cannot form the basis for a double jeopardy claim," as they "are not criminal prosecutions." *Foxx v. Pennington*, No. 4:16-cv-104-MPM-RP, 2017 WL 6389660, at *2 (N.D. Miss. Dec. 14, 2017) (collecting cases). Therefore, Tolbert's double jeopardy claim should be dismissed for failure to state a claim.

### F. *Bivens* Remedy

Because Tolbert is seeking monetary damages against federal officials in their individual capacities for alleged constitutional violations, he is seeking a remedy under *Bivens*. In *Bivens*, the Supreme Court held that a plaintiff injured by

a federal agent could recover damages despite the absence of a federal statute

granting such a right. *Bivens* specifically dealt with the Fourth Amendment. 403

U.S. at 389. However, the Supreme Court has only extended *Bivens* in two other

contexts: employment discrimination under the Fifth Amendment and prison

officials' failure to provide medical care under the Eighth Amendment. *Carlson v.*

*Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979).

The Supreme Court has now "adopted a far more cautious course before

finding implied causes of action," as "it is a significant step under separation-of-

powers principles for a court to determine that it has the authority, under the

judicial power, to create and enforce a cause of action for damages against federal

officials in order to remedy a constitutional violation." *Ziglar v. Abbasi*, 137 S. Ct.

1843, 1855-56 (2017). Ultimately, "expanding the *Bivens* remedy is now a

'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Because Congress, not the Judiciary, should generally decide whether to

provide a damages remedy, courts must consider whether a *Bivens* claim is in a

"new context" and whether there are any "special factors counselling hesitation in

the absence of affirmative action by Congress." *Id.* at 1857-59; *see also Hernandez v.*

*Mesa*, 885 F.3d 811, 816-19 (5th Cir. 2018). A case "presents a new *Bivens* context"

if it "is different in a meaningful way from previous *Bivens* cases." This can include

differences such as:

> the rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action; the
> extent of judicial guidance as to how an officer should
> respond to the problem or emergency to be confronted; the

> statutory or other legal mandate under which the officer
> was operating; the risk of disruptive intrusion by the
> Judiciary into the function of other branches; or the
> presence of potential special factors that previous *Bivens*
> cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60. With respect to the "special factors," the analysis

primarily focuses on "separation-of-powers principles," with courts "concentrat[ing]

on whether the Judiciary is well suited, absent congressional action or instruction,

to consider and weigh the costs and benefits of allowing a damages action to

proceed." *Hernandez*, 885 F.3d at 818 (quoting *Abbasi*, 137 S. Ct. at 1857-58). These

special factors will "cause a court to hesitate before answering that question in the

affirmative." *Abbasi*, 137 S. Ct. at 1858.

With respect to Tolbert's due process claims, courts, including courts in this

district, have held that due process claims present a new context under *Bivens*. *See*

*Causey v. Carlton*, No. 3:18-cv-181-CWR-LRA, 2020 WL 1500020, at *3 (S.D. Miss.

Feb. 11, 2020) (*Bivens* "has never been extended to due process violations arising

from disciplinary convictions as asserted herein"); *Shaw v. Mitchell*, No. EDCV 18-

0176-CAS, 2019 WL 5865777, at *5 (C.D. Cal. Sept. 30, 2019) ("The Supreme Court

has never extended *Bivens* in the context of a prisoner's due process . . . claims

arising out of a prison disciplinary proceeding or a placement determination");

*Williams v. Kobayashi*, No. 1:18-cv-336-DKW-RLP, 2018 WL 5258614, at *6 (D.

Haw. Oct. 22, 2018) ("a federal prisoner's procedural due process claims arising out

of prison disciplinary charges present a new context").

Although the Supreme Court has recognized a *Bivens* action for a cruel and

unusual punishment violation in the context of a prison official's failure to provide medical treatment, Tolbert's claim that his confinement in SHU constituted cruel and unusual punishment is distinguishable. *See Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019); *see also Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 532338, at \*5-6 (N.D. Tex. Feb. 3, 2020) (holding that not all claims arising under the Eighth Amendment are cognizable under *Bivens*). Therefore, Tolbert's claim that being held in SHU for an extended period of time constitutes cruel and unusual punishment presents a new context.

Next, even though the Supreme Court recognized a *Bivens* remedy for employment discrimination, Tolbert's case is clearly a "meaningfully" different case. Tolbert's argues he was being discriminated against when he was held in SHU and when the Defendants attempted to transfer him; he appears to argue that he was discriminated against because of his past disciplinary incidents (ECF No. 1 at 6). This claim presents a new context under *Bivens*. *See, e.g. Silva v. Ward*, No. 16-cv-185-WMC, 2019 WL 4721052, at \*4 (W.D. Wis. Sept. 26, 2019) (concluding that a prisoner's race discrimination claim presents a new context); *Bierwiler v. Goodwin*, No. 16-00009-GF-BMM-JTJ, 2018 WL 3559134, at \*3 (D. Mont. May 22, 2018) (declining to extend *Bivens* to a race discrimination claim against an employee of a private prison company); *Alexander v. Ortiz*, No. 15-6981-JBS-AMD, 2018 WL 1399302, at \*4 (D.N.J. Mar. 20, 2018) (finding a prisoner's employment discrimination claim presented a new context).

Finally, the Fifth Circuit has held that a First Amendment free exercise

claim "likely presents a new context under *Bivens*." *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017). Other courts have concluded that First Amendment claims do present a new context. *Biron v. Upton*, No. 4:15-cv-205-P, 2020 WL 85146, at *5 (N.D. Tex. Jan. 7, 2020) (collecting cases).

Because each of these claims present a new context under *Bivens*, the Court must consider whether special factors counsel hesitation in extending the *Bivens* remedy. Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy . . . ." *Abbasi*, 137 S. Ct. at 1857-58. One frequently considered "special factor" is the presence of an alternative remedial structure, such as the prison grievance system: "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858; *see also Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169 (E.D. Cal. 2018) ("It is clear that Plaintiff has alternative remedies available to him, including the [BOP's] administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *Taylor v. Lockett*, No. 5:17-cv-23-Oc-02PRL, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019) (collecting cases) ("Multiple courts have found that the BOP's grievance process is an alternative remedy that cuts against extending the *Bivens* remedy"). Because Tolbert had access to the grievance system, even if he was ultimately unhappy with the result, this is a special factor counseling hesitation.

10

Another such special factor is "legislative action suggesting that Congress does not want a damages remedy." *Abbasi*, 137 S. Ct. at 1865. Because Congress has considered prisoner abuse in the context of the PLRA and has "been active in the area of prisoners' rights," there are sufficient reasons that should cause this Court to hesitate before extending *Bivens. Id.*; *Taylor*, 2019 WL 764023, at *8. Additionally, "concerns of institutional security" counsel hesitation, as "Congress is better suited than the judiciary to 'balance the challenges prison administrators and officers face in maintaining prison security against the expansion of the private right of action for damages.'" *Taylor*, 2019 WL 764023, at *8 (quoting *Florence v. Bd of Chosen Freeholders*, 566 U.S. 318, 327-28 (2012)); *Butler v. Porter*, No. 2:17-cv-230, 2018 U.S. Dist. LEXIS 218270, at *10 (W.D. La. Sept. 10, 2018). In light of these special factors, the undersigned finds that a *Bivens* remedy should not be extended to Tolbert's due process claims, his cruel and unusual punishment claim as it relates to SHU confinement, his discrimination claim, or his free exercise claim.

## G. Medical Care Claim

Tolbert's only remaining claim is his claim for inadequate medical care. He states he is a "chronic care medical inmate," as he has high blood pressure and kidney disease. He contends he did not see his health care provider for his regular checkups during his time in SHU. He also argues SHU confinement has caused him to become mentally deranged, but he admits he has talked to a psychologist (ECF No. 1 at 9). Plaintiff was advised that he had failed to assert this claim against any

named Defendant, and he was given the opportunity to name the specific Defendant or Defendants who denied his requests for medical care (ECF No. 25). In response (ECF No. 28), he indicates he saw his doctor once while in SHU between October 2017 and April 2018, but he did not state which Defendants denied his requests for medical care or when the denials occurred. Defendants argue this claim should be dismissed for failure to state a claim, as Tolbert's allegations are vague and conclusory. Plaintiff did not address this argument in his Response (ECF No. 57) to the Motion to Dismiss.

The Eighth Amendment's protections against cruel and unusual punishment require prison officials to "provide humane conditions of confinement," including ensuring that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Only where prison officials exhibit "deliberate indifference" towards a "substantial risk of serious harm" will an Eighth Amendment violation be found. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 834). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 346 (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Deliberate indifference is an extremely high standard to meet." *Id.*

Even accepting Tolbert's allegations as true, he has not shown that these Defendants refused to treat him, ignored his complaints, or showed a "wanton

disregard" for his medical needs, as he has not alleged any facts from which an inference could be drawn that an excessive risk of harm existed. *See Lerma v. Falks*, 338 Fed. App'x 472, 474 (5th Cir. 2009). Instead, he only asserts that he was not able to attend routine appointments, but he admits he saw his regular doctor once and spoke with a psychologist. As such, he has failed to state a claim upon which relief could be granted.

Granted, Courts should generally not dismiss a prisoner's complaint for failure to state a claim before the plaintiff has been given an opportunity to amend. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, Tolbert has filed various attachments to his Complaint (ECF Nos. 4, 7, 8, 9 & 60). Additionally, despite being warned that his claim for inadequate medical care was deficient (ECF No. 25), he did not provide the Court with the information sought, such as the names of the Defendants responsible or the dates on which he sought treatment (ECF No. 28). As such, the undersigned recommends that Tolbert's claim for inadequate medical care be dismissed. *See Lerma*, 338 Fed. App'x at 474 ("when a *pro se* prisoner has been given several opportunities to amend his claims dismissal is proper," otherwise, it "is harmless error to dismiss a case for failure to state a claim without giving the plaintiff an opportunity to amend if the plaintiff has alleged his best case or the dismissal is without prejudice").

## III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that Defendants Jackson, Martin, and Martinez be dismissed without prejudice and the remaining

13

Defendants' Motion to Dismiss (ECF No. 55) be granted.

## IV. NOTICE OF RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and
> recommendations, each party has fourteen days to serve
> and file written objections to the report and
> recommendations. A party must file objections with the
> clerk of court and serve them upon the other parties and
> submit them to the assigned district judge. Within seven
> days of service of the objection, the opposing party or
> parties must either serve and file a response or notify the
> district judge that they do not intend to respond to the
> objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and

recommendations to which he objects. The District Judge need not consider

frivolous, conclusive, or general objections. A party who fails to file written

objections to the proposed findings, conclusions, and recommendations within

fourteen days of being served a copy shall be barred, except upon grounds of plain

error, from attacking on appeal any proposed factual finding or legal conclusion

adopted by the Court to which he did not object. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 29th day of April, 2020.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE

14